

**FILED**

APR 0 3 2015

DAVID CREWS, CLERK
BY_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JAMES "JIMMY" STEWART                                                       PLAINTIFF

versus                              Civil Action No. 3:15cv051-SA-SAA

FIRST TENNESSEE BANK, a subsidiary of
FIRST HORIZON NATIONAL CORPORATION                          DEFENDANT

# COMPLAINT

### (Jury Trial Demanded)

COMES NOW Plaintiff, James "Jimmy" Stewart ("Plaintiff" or "Mr. Stewart"), by and through his counsel of record, and files this Complaint against the Defendant, First Tennessee Bank, a subsidiary of First Horizon National Corporation ("Defendant" or "First Tennessee"), and in support thereof would show the following facts, to wit:

### Parties

1.      Plaintiff, James "Jimmy" Stewart, is an adult resident citizen of the state of Mississippi residing at Rt. 2, Box 372C, Senatobia, Mississippi 38668.

2.      Defendant First Tennessee Bank is a wholly-owned subsidiary of First Horizon National Corporation, a Tennessee corporation with its headquarters located at 165 Madison Avenue, Memphis, Tennessee 38103, and which may be served with process through its registered agent, Clyde A. Billings, Jr., at the same address.

1

## Jurisdiction

3. This Court has original jurisdiction over this action pursuant to 28 USCA §1332 in that complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has *in personam* jurisdiction over the Defendant in that (a) it operated a banking business that made loans, foreclosed on real property, and otherwise conducted business in the state of Mississippi; and (b) its acts and omissions committed in the state of Mississippi give rise to the claims at issue.

## Venue

5. This Court has venue of this action pursuant to 28 USCA§191 in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred or accrued within the Oxford Division of the Northern District of Mississippi.

## Underlying Facts

6. For many years, Mr. Stewart owned five tracts of real property located in Section 9, Township 5 South, Range 5 West in Tate County, Mississippi. These five tracts, which are adjacent to one another, are shown as Parcels 2.1, 2.2, 2.3, 2.4 and 2.5 on the plat below:



7. Mr. Stewart owns Parcel 2.1 free and clear of any liens.

8. Mr. Stewart borrowed money from Massey Loans, Inc. to build a home on Parcel 2.2, and pledged Parcel 2.2 and the home constructed thereon to Massey Loans, Inc. as security. Mr. Stewart continues to pay the mortgage loan secured by Parcel 2.2 through the date of this complaint.

9. Mr. Stewart likewise borrowed funds to develop Parcel 2.3 from CitiMortgage. Stewart defaulted on this obligation, and CitiMortgage foreclosed on Parcel 2.3 and is the current owner of that tract.

10. In February, 2006, Mr. Stewart and his wife, Marzel, executed a deed of trust in favor of Thomas F. Baker, Trustee, for the benefit of Peoples Bank, a division of First Tennessee Bank, NA, which secured Parcels 2.4 and 2.5.

3

11. In 2010, Mr. Stewart defaulted on his obligation to First Tennessee, which initiated and completed foreclosure of Parcels 2.4 and 2.5. These parcels were struck off and sold to First Tennessee Bank National Association at the sale and were subsequently transferred to First Tennessee by way of a Substituted Trustee's Deed on November 18, 2010. A true and correct copy of this deed is attached as Exhibit A.

12. At the time of the foreclosure, Mr. Stewart owned and operated a horse-training barn that was located in part on Parcel 2.4, which was subject to First Tennessee's deed of trust, and in part on Parcel 2.1, which Stewart owned free and clear. The barn has 26 stalls, each of which was rented at the time of the foreclosure for $450.00 per month.

13. At the time of the First Tennessee foreclosure, Mr. Stewart was renting the home he built on Parcel 2.2 to tenants, who were paying him $800.00 per month.

14. After it foreclosed on Parcels. 2.4 and 2.5, First Tennessee ejected Stewart from the horse barn that straddled the boundary between Parcel 2.4 and Parcel 2.1, despite the fact that it did not and does not own the entirety of the facility. This action, to which Stewart objected without effect, resulted in the closure of Stewart's horse-training business and the loss of all income related to that business.

15. After it foreclosed on Parcels 2.4 and 2.5, First Tennessee also contacted Mr. Stewart's tenants in the house on Parcel 2.2 and informed them that Stewart no longer owned the residence, that they would be forced to leave, and that they could avoid eviction by accepting $1500.00 in a "cash for keys" transaction with First Tennessee. The tenants eventually accepted the funds from First Tennessee and vacated the property.

16. First Tennessee's agents also posted signs on the property asserting that it was owned by First Tennessee and listed the property for sale with a realtor. A true and correct copy of one of the signs posted on the house located on Parcel 2.2 is attached as Exhibit B.

17. Between November 18, 2010 and November 1, 2013, First Tennessee periodically entered into Stewart's properties located on Parcel 2.2 and Parcel 2.1, interfered with his rights to occupy and use those properties, and prevented him from leasing those properties to third parties to produce income. During this time, First Tennessee sent its employees and agents onto the properties in order to inspect, appraise, and market them.

18. Between November 18, 2010 and November 1, 2013, First Tennessee permitted the properties to be damaged. Electrical wires were stripped from both properties. Appliances were stolen. Doors were broken down and fixtures were removed. The damages to the horse barn exceeded $22,500.00. The damages to the residence located on Parcel 2.2 were much worse. The home appraised for $130,000.00 before First Tennessee began its cycle of continuing trespass. The damage to the house was so extreme that, by 2013, First Tennessee was marketing the property for approximately $20,000.00.

19. Between November 18, 2010 and November 1, 2013, Mr. Stewart was unable to operate his horse-training business in the barn located on Parcels 2.1 and 2.4. As a consequence, he lost $11,700.00 per month in stall rental and training fees ($450.00 x 26 stalls).

20. Between November 18, 2010 and November 1, 2013, Mr. Stewart was unable to rent the house located on Parcel 2.2. Each month, he lost $800.00 in rental income.

21. Mr. Stewart was only able to retake possession of the properties in November 2013, after an employee of Massey Loans, Inc., the lienholder on Parcel 2.2, met with an attorney representing First Tennessee, William Palmertree, Esq., at the Justice Court in Tate County at a

5

hearing on First Tennessee's complaint for the formal ejectment of Mr. Stewart from the horse barn located on Parcels 2.1 and 2.4. Upon information and belief, it was made clear to Mr. Palmertree at that time that First Tennessee had been wrongfully entering onto Parcels 2.1 and 2.2 and denying Mr. Stewart access to those properties.

22. First Tennessee has failed to communicate with Mr. Stewart in any fashion since late 2013.

## Duties and Breaches

### I.

### Claim for Trespass

23. At all times pertinent hereto, Mr. Stewart was the owner of Parcels 2.1 and 2.2, as indicated on the plat included above.

24. At no time pertinent hereto did First Tennessee have any ownership interest in Parcel 2.1 or Parcel 2.2.

25. From the date of the foreclosure of Parcels 2.4 and 2.5 through November 1, 2013, First Tennessee and its agents periodically and repeatedly entered onto Parcels 2.1 and 2.2 and interfered with Mr. Stewart's right of exclusive possession, causing damage to Mr. Stewart.

26. First Tennessee's acts of trespass were intentional, and were committed with gross negligence and with reckless disregard for the rights of Mr. Stewart.

27. First Tennessee's acts of trespass resulted in physical damage to Mr. Stewart's real property and financial damage to Mr. Stewart's businesses.

28. As a consequence of its wrongful trespasses, First Tennessee is liable to Mr. Stewart for the actual and special damages he incurred, as well as for punitive damages in an amount

sufficient to deter similar reckless and grossly negligent conduct in the future, and for all attorneys' fees in the event of an award of punitive damages.

## Ad Damnum

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Jimmy Stewart, brings this action against the Defendant, First Tennessee, and demands judgment against Defendant for all actual and special damages suffered by Plaintiff as a result of First Tennessee's trespasses; for punitive damages in an amount sufficient to deter similar conduct in the future; for all equitable relief available pursuant to Mississippi law; and for the costs of this litigation, including reasonable attorneys' fees. The relief sought by Plaintiff is in excess of the jurisdictional limit of the United States District Court.

## Demand for Jury Trial

Plaintiff demands trial by jury on all issues so triable in this action.

Respectfully submitted,

/s/ Lawrence Deas
W. Lawrence Deas
MS Bar No. 100227
Deas & Deas, LLC
P.O. Box 7282
Tupelo, MS 38802
Telephone (662) 842-4546
Facsimile (662) 842-5449
Lawrence@deaslawfirm.com

        William Liston III (MSB #8482)
        LISTON/LANCASTER PLLC
        Post Office Box 14127
        Jackson, Mississippi 39236
        Telephone (601) 981-1636
        wlist3@aol.com

        COUNSEL FOR PLAINTIFF